UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMIR M. HAMZA, | |
| Plaintiff, | Civil Action No. 19-8971 (FLW) (TJB) |
| v. | |
| UNITED CONTINENTAL HOLDINGS, LLC, *et al.*, | OPINION |
| Defendants. | |

**WOLFSON, Chief Judge:**

*Pro se* Plaintiff Amir M. Hamza ("Plaintiff") has filed an Amended Complaint against Defendant United Continental Holdings, LLC ("Defendant" or "United"),[1] bringing claims of negligence, breach of contract, intentional infliction of emotional distress, wrongful termination, and delay in investigation of discrimination. Presently before the Court is Defendant's Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendant's Motion is **GRANTED**. Plaintiff's negligence and delay in investigation claims are **DISMISSED WITH PREJUDICE**, and Plaintiff's remaining claims are **DISMISSED WITHOUT PREJUDICE**. Plaintiff is given leave to file a second amended complaint within thirty days of the date of the Order accompanying this Opinion.

**I.    BACKGROUND**

For the purposes of this Motion to Dismiss, the Court takes as true all allegations of the

---

[1] The Amended Complaint additionally names as Defendants Oscar Munoz, Mark Di Carlo, Stacy Katz, Mark Hassel, Alex Barreto, Sandra Sales, Mary Sturchio, and Jeffrey Jackel. (*See* Am. Compl.) While these Defendants have been served with the Complaint, (*see* ECF No. 12), none have entered an appearance in this matter.

Amended Complaint.  From September 2011 to December 2018, Plaintiff was employed by United as a Flight Attendant.  (Am. Compl. ¶ 1.)  Plaintiff alleges that at on April 14, 2018, he was the victim of sexual assault and arrived for work at Dulles International Airport in "dire medical and psychological condition" as a result of the assault.[2]  (*Id.* ¶ 14.)  Plaintiff claims that he "was slurring his speech, falling unconscious, making unintelligible conversations, making gestures with his hands, and his eyes were rolling back in his head."  (*Id.* ¶ 15.)  Another flight attendant, Nelson Segovia, observed Plaintiff's condition and allegedly discussed the matter with Captain Oktay Basaran.  (*Id.*)  Thereafter, Defendant Alex Barreto ("Barreto"), the Inflight Supervisor, approached Plaintiff to determine his condition and escorted him to the Inflight Base to be evaluated by Sandra Sales, a supervisor.  (*Id.* ¶¶ 16–17.)  Plaintiff alleges that, despite his condition, he was not taken to the United Medical Clinic and instead "testing was completed in a bathroom stall" more than 4 hours after he was escorted to the Inflight Base.[3]  (*Id.* ¶ 21.)  Shortly after testing was completed, Plaintiff apparently left the terminal and "jump[ed] on a Hertz bus."  (*Id.* ¶ 22.)  Plaintiff asserts that Barreto and Sales were "negligent in allowing the Plaintiff to remain untreated by medical personnel for over four hours," for not properly monitoring his condition, and permitting him to leave the airport.  (*Id.* ¶ 23.)

It appears that following the April 14, 2018 incident, Plaintiff was continuously absent from work.  (*See* Am. Compl. ¶ 26; Am. Compl., Ex. G.)  Plaintiff alleges that, to support his absences, he provided letters to Mark Di Carlo ("Di Carlo") and Mary Sturchio ("Sturchio") "to

---

[2]   The Amended Complaint does not indicate who allegedly committed the assault, or where it occurred.

[3]   While the Amended Complaint does not indicate what type "testing" was performed, emails attached to the Amended Complaint indicate that Plaintiff was drug tested at around 1:50 a.m. on April 15, 2018.  (*See* Am. Compl., Ex. D.)

2

verify he was in the care of a Health Care Professional." (Am. Compl. ¶ 26.) In that connection, Plaintiff references four letters that his treating health care professional, a licensed clinical social worker, addressed to Di Carlo and Sturchio. (*Id.*) In or around November 28, 2018, it appears Plaintiff was made aware that he was required to provide letters of treatment directly to United Medical to support his absences. (*Id.* ¶ 27.) Thereafter, his treating health care professional completed the United Medical Absence Certificate and Plaintiff submitted it to United Medical. (*Id.* ¶ 28.) Plaintiff claims that after the Absence Certificate was submitted, he was informed that a licensed clinical social worker did not qualify as a health care professional and he was required to obtain an Absence Certificate from his primary care physician. (*Id.* ¶ 31.) At some point after November 2018, Plaintiff was informed that he had been approved for medical leave through January 31, 2019. (*Id.* ¶ 31.)

Plaintiff further alleges that Di Carlo "believed the Plaintiff was falsifying information to [United] and the police and took it upon himself to label the Plaintiff a liar." (Am. Compl. ¶ 37.) In that regard, Plaintiff alleges that Di Carlo told the detective who was investigating Plaintiff's sexual assault that Plaintiff was enrolled in a substance abuse program with the hope that the Detective "would view the Plaintiff as a liar." (*Id.* ¶ 38.) Plaintiff claims that the investigating detective thereafter shared that information with the New York State Police, who began "targeting" Plaintiff and constantly monitoring him. (*Id.* ¶ 39.) Plaintiff contends that "Di Carlo knew the level of emotional distress the Plaintiff would face due to his lies . . . [and] hoped if the Plaintiff was charged with a crime it would be easier to terminate the Plaintiff." (*Id.* ¶ 40.)

On December 5, 2018, Plaintiff's employment was terminated. (*Id.* ¶ 1.) Plaintiff claims that he was wrongfully terminated by United despite a successful eight-year career and alleges that "Di Carlo knew Plaintiff had a successful career at United and aimed to destroy the Plaintiff's

3

reputation to ensure his termination." (*Id.* ¶ 44–45.) Further, Plaintiff claims that, following his termination, Mark Hassel of United Human Resources "emailed the Plaintiff and told him an investigation would be initiated to determine if there were any issues related to the Plaintiff's termination." (*See id.* ¶ 48.) Plaintiff also alleges that, in December 2018, he contacted Oscar Munoz regarding his claims of wrongful termination and discrimination. (*Id.* ¶ 51.) Plaintiff was assured that an investigation would be conducted, but it appears that an investigation was not allegedly initiated until five months after Plaintiff was terminated. (*Id.* ¶ 50.)

On March 26, 2019, Plaintiff filed a Complaint against Defendants that set forth factual allegations related to his April 14, 2018 sexual assault. (*See* Am. Compl.) Following service of the Complaint upon United, it filed a motion for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) and to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 15.) On December 30, 2019, the Honorable Esther Salas, U.S.D.J.,[4] granted Defendant's motion for a more definite statement. (*See* ECF No. 18.) Rather than dismiss the Complaint pursuant to Rule 12(b)(6), the Court ordered Plaintiff to file an amended complaint within 30 days of the date of the Order granting Defendant's motion. (*Id.*) Plaintiff filed the Amended Complaint on January 28, 2020. (*See* Am. Compl.) This Motion to Dismiss followed.

## II. STANDARD OF REVIEW

In resolving a motion to dismiss for failure to state a claim, under Rule 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)); *see also Zimmerman v. Corbett*,

---

[4] This matter was reassigned to the undersigned on July 27, 2020. (*See* ECF No. 36.)

4

873 F.3d 414, 417–18 (3d Cir. 2017), *cert. denied* 138 S. Ct. 2623 (2018); *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

As a pro se litigant, Plaintiff is entitled to liberal construction of his complaint. *See Liggon–Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011). To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III.  DISCUSSION

Before addressing the merits of Defendant's motion, the Court notes that Plaintiff, in his 93-page Opposition to Defendant's Motion to Dismiss, asserts eight new causes of action that were not set forth in the Amended Complaint, as well as new factual allegations not appearing in the Amended Complaint in support of his pleaded claims.[5] Plaintiff's Opposition additionally includes new factual allegations in support of his claims that are not included in the Amended Complaint. It is well established that a plaintiff may not amend his complaint in a brief in opposition in a motion to dismiss. *See Com. of. Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (alteration in original) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745

---

[5]  Specifically, Plaintiff adds the following new claims: unlawful imprisonment, violation of the Health Insurance Portability and Accountability Act, invasion of privacy/false light, defamation, excessive burden, violation of the Family Medical Leave Act, discrimination in violation of the Americans with Disabilities Act ("ADA"), and retaliation in violation of the ADA. Plaintiff also includes new factual allegations that relate to his breach of contract, wrongful termination and intentional infliction of emotional distress claims.

F.2d 1101, 1107 (7th Cir. 1984)); *Li v. Metropolitan Life Ins. Co.*, No. 16-1845, 2016 WL 5477994, at *3 (D.N.J. Sept. 26, 2016) (disregarding allegations that were not included in complaint); *Eli Lilly & Co. . Roussel Corp.*, 23 F. Supp. 2d 460, 493 (D.N.J. 1998) ("Since a 'complaint may not be amended by the briefs in opposition to a motion to dismiss,' the Court must disregard these allegations."). Nevertheless, where a plaintiff is proceeding *pro se*, courts have construed additional allegations made in "opposition papers as a motion to amend the complaint, or have granted leave to amend a *pro se* plaintiff's complaint where the plaintiff has introduced new facts in his opposition papers but has not requested leave to amend." *Gordon v. Kartri Sales Co., Inc.*, No. 17-320, 2018 WL 1123704, at *3 (M.D. Pa. Mar. 1, 2018); *see also Miles v. Ansari*, No. 10-6179, 2011 WL 2974709, at *3–4 (D.N.J. July 21, 2011) (declining to consider new allegations raised in *pro se* plaintiff's opposition to motion to dismiss, but granting leave to amend). Here, the Court declines to consider Plaintiff's new claims on this Motion as Plaintiff has not sought leave to amend the Amended Complaint to include these new claims. Moreover, the allegations in the Plaintiff's Opposition are disorganized, rambling, and interspersed with legal argument, making it difficult to discern the factual basis for each of Plaintiff's claims. For these new claims to be considered, Plaintiff must include them in an organized, amended complaint. In light of Plaintiff's *pro se* status, the Court will give him leave to file a Second Amended Complaint that is consistent with this Opinion and clearly sets forth the factual basis for each of his claims.

Accordingly, the Court will, at this time, only consider the parties' arguments with respect to the five claims asserted in the Amended Complaint: negligence, breach of contract, wrongful termination, intentional infliction of emotional distress, and delay in investigation.

    a. **Negligence**

In Count One of the Amended Complaint, Plaintiff brings a negligence claim based on

Barreto's alleged failure to promptly obtain medical care for him on April 14, 2018. (Am. Compl. ¶ 23.) Plaintiff further claims that Barreto was negligent by failing to monitor him and permitting him to leave the airport unsupervised. (*Id.*) Defendant argues that Plaintiff's negligence claim should be dismissed because New Jersey law bars employees from asserting negligence claims against their employer. The Court agrees. Under the New Jersey Workers' Compensation Act, N.J.S.A. § 34:15-8,

> a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.

In other words, the Workers' Compensation Act bars an action in negligence brought by an employee against an employer. *See Van Dunk v. Reckson Assocs. Realty Corp.*, 210 N.J. 449, 451 (2012) ("The "Workers' Compensation] Act's remedy is exclusive. . . ."); *see also Gaines v. United Parcel Serv., Inc.*, No. 13-3709, 2003 WL 21077965, at *5 (D.N.J. Apr. 14, 2014); *Rivera v. Cracker Barrel Old Country Store, Inc.*, No. 02-4160, 2003 WL 21077965, at *5 (D.N.J. Mar. 3, 2003) ("[I]t is clear that New Jersey's Workers' Compensation Act provides the exclusive remedy for workplace injuries that involve employer negligence." (citation omitted)).

Plaintiff does not dispute that the Workers' Compensation Act bars his negligence claim. Rather, Plaintiff contends that his claim falls into the "intentional wrong" exception to the Act. At the outset, the Court notes that, as a matter of pleading, it is "contrary to the very definition of 'negligence' to categorize a negligence claim with the 'intentional wrong' exception to the New Jersey Workers' Compensation Act." *Birch v. Wal-Mart Stores, Inc.*, No. 15-1296, 2015 WL 8490938, at *4 (D.N.J. Dec. 9, 2015). I will, nevertheless, consider Plaintiff's argument that Barreto's conduct falls into the intentional wrong exception. The intentional wrong exception is purposefully narrow as "the statutory scheme contemplates that as many work-related disability

7

claims as possible be processed exclusively within the Act." *Millison v. E.L. du Pont de Nemours & Co.*, 101 N.J. 161, 177 (1985). In that connection, to bring a claim into the intentional wrong exception, a plaintiff must allege that (1) his employer knew that its actions were "substantially certain to result in injury or death to the employee," and (2) "the resulting injury and the circumstances of its infliction on the worker [are] (a) more than a fact of life of industrial employment and (b) plainly beyond anything the Legislature intended the Workers' Compensation Act to immunize." *Birch*, 2015 WL 8490938, at *4 (citing *Laidlow v. Hariton Mach. Co.*, 170 N.J. 602, 617 (2002)). Here, the Amended Complaint does not contain sufficient allegations to satisfy this standard. While Plaintiff asserts that Barreto knew that Plaintiff was "visibly medically incapacitated," the Amended Complaint contains no allegations suggesting that Barreto knew that a delay in obtaining medical treatment for Plaintiff would lead to further "injury or death." *See id.* Plaintiff admits as much in his briefing as he states that his situation only "partially" satisfies the requirements of the intentional wrong exception. Because Plaintiff has not alleged that Defendant's "negligent" conduct in this regard is premised on any intentional wrong, Plaintiff's negligence claim is dismissed as barred by the New Jersey Workers' Compensation Act.

### b. Breach of Contract

Both Counts One and Two of the Amended Complaint assert breach of contract claims. In Count One, Plaintiff alleges that the actions of Barreto and Sales "constitute a Breach of Contract by failing to provide medical assistance" or account for "the safety and wellbeing of the Plaintiff." (Am. Compl. ¶ 23.) In Count Two, Plaintiff alleges that Di Carlo and Sturchio "failed to follow United Medical procedures in Breach of Contract and in violation of United policies" by failing to properly advise Plaintiff as to how his medical leave of absence needed to be documented. (*Id.* ¶

8

34.) Defendant argues that Plaintiff's breach of contract claims must be dismissed because Plaintiff fails to identify a valid contract between the parties. In response, Plaintiff contends that he and Defendant are bound by an implied-in-fact contract as a result of his employment.[6] (Pl. Opp., at 24.)

To state a claim for breach of contract under New Jersey law, a plaintiff must allege: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). The existence of a valid contact between the parties is an essential element of a breach of contract claim. *See Sheet Metal Workers Intern. Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013). Here, the Amended Complaint is devoid of any allegation that there is a valid contract between Plaintiff and Defendant. Rather, Plaintiff refers vaguely to "policies" and "procedures" that were breached. Such vague and conclusory allegations do not pass muster under Rule 12(b)(6).

To the extent Plaintiff's claim is premised on an implied contract theory based on Defendant's policies and procedures, it also fails. "[G]eneral policies and procedures do not rise to the level of legal contracts." *Gaines v. United Parcel Serv., Inc.*, No. 13-3709, 2014 WL 1450113, at *10 (D.N.J. Apr. 14, 2014). Indeed, for employment policies and procedures to provide an implied right of contract, a "policy manual must contain more than the company's general policies or goals." *Catalane v. Gillian Instrument Corp.*, 271 N.J. Super. 476, 495 (App.

---

[6] In his Opposition, Plaintiff contends that there are several documents, including a Collective Bargaining Agreement, Policies and Procedures, and employee manuals, "which together contain contractual provisions to protect the Plaintiff and create a basis for relief under breach of contract," (Pl. Opp., at 21–22). However, as I explained above, the Court will not consider new factual allegations contained in Plaintiff's Opposition on this Motion to Dismiss. *See Zimmerman*, 836 F.2d at 181. To the extent Plaintiff claims that any of these agreements were violated, he may include such claims in his second amended complaint.

9

Div. 1994). Here, Plaintiff provides no details regarding the terms of Defendant's policies and procedures such that the Court can determine whether they give rise to an implied right of contract. Thus, Plaintiff cannot state a claim for breach of an implied-in-fact contract.

For these reasons, Plaintiff's breach of contract claims are dismissed.

### c. Intentional Infliction of Emotional Distress

In Count Three, Plaintiff brings a claim of intentional infliction of emotional distress that appears to be premised on Di Carlo's statement to the investigating detective that Plaintiff was in treatment for substance abuse. Plaintiff alleges this statement was false, and it was made with the intent to harm Plaintiff's reputation and cause his termination. Defendant argues that this claim should be dismissed because Plaintiff has not alleged any "outrageous" conduct.

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must plead "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Taylor v. Metzger*, 152 N.J. 490, 509 (1998). New Jersey sets a "high bar" for a plaintiff to establish extreme and outrageous conduct. *See Taveras v. Resorts Int'l Hotel, Inc.*, No. 07-4555, 2008 WL 4372791, at *6 (D.N.J. Sept. 19, 2008) (citing *Fregara v. JetAviation Bus. Jets*, 764 F. Supp. 940, 956 (D.N.J. 1991)). As such, a plaintiff must allege "conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kennedy v. American Airline Inc.*, 195 F. Supp. 3d 646, 658 (D.N.J. 2016) (quoting *Edmond v. Plainfield Bd. of Educ.*, 171 F. Supp. 3d 293, 316 (D.N.J. 2016)).

In the employment context, "[i]t is extremely rare to find conduct . . . that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Weber v. Don Longo, Inc.*, No. 15-2406, 2018 WL 1135333, at

10

*18 (D.N.J. Mar. 2, 2018) (quoting *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)). Moreover, the Third Circuit has instructed that "while loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event and cannot provide a basis for recovery for infliction of emotional distress." *Cox*, 861 F.2d at 395 (quotation omitted).

Plaintiff fails to state a claim for intentional infliction of emotional distress. The allegations contained in Plaintiff's Amended Complaint do not demonstrate that Di Carlo engaged in any "extreme and outrageous conduct." Simply put, Plaintiff alleges that Di Carlo misrepresented Plaintiff's medical history to the detective and painted Plaintiff to be a liar. Even if that were true, such conduct is not so extreme and outrageous to form a basis for an IIED claim. *See, e.g.*, *Kennedy*, 195 F. Supp. 3d at 658 (dismissing IIED claim where plaintiff alleged that defendants made misrepresentations about him to third parties). As such, Plaintiff's IIED claim is dismissed.

### d. Wrongful Termination

In Count Four of the Amended Complaint, Plaintiff alleges that he was wrongfully terminated from his position as a flight attendant. As Defendant points out, the factual basis for Plaintiff's wrongful termination claim is unclear. It appears that Plaintiff alleges that his termination was "unwarranted" because he had a successful career with United "without any incidents." (Am. Compl. ¶ 47.) Further, the Amended Complaint can also be construed to assert that Plaintiff was terminated in violation of the Americans with Disabilities Act, based on the dispute regarding the medical documentation for his extended absence following the April 2018 sexual assault. (*See* Am. Compl. ¶¶ 26–35.)[7]

First, to the extent Plaintiff's wrongful termination claim is premised on his allegation that

---

[7] In his Opposition, Plaintiff alleges that his termination was in violation of public policy pursuant to *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58 (1985). Because Plaintiff did not include this claim, however, in his Amended Complaint, the Court will not consider it.

his termination was unwarranted based on his successful career history with United, it fails as a matter of law. Simply because an employee performed well during his employment does not raise an inference that his termination was somehow unlawful. *See Turner v. Schering–Plough Corp.*, 901 F.2d 335, 343–44 (3d Cir. 1990) (finding that proximity of positive review and termination did not raise inference that tendered reason was pretext for discrimination); *see also Brewer v. Quaker State Oil Refining Co.*, 72 F.3d 326, 337 (3d Cir. 1995) (Roth, J., dissenting) ("Good performance alone will not raise an inference of wrongful termination."). More to the point, New Jersey law presumes that an employee is "at-will," meaning that "an employer may fire an employee for good reason, bad reason, or no reason at all." *McCrone v. Acme Mkts.*, 561 F. App'x 169, 172 (3d Cir. 2014). Pursuant to the at-will employment doctrine, either the employee or the employer can terminate the employment "unless an agreement exists that provides otherwise." *Id.* Plaintiff does not suggest that his termination was contrary to any employment agreement with United and, therefore, United was permitted to terminate Plaintiff's employment for any legal reason.

The Amended Complaint can also be construed as attempting to state a claim for termination in violation of the ADA, as the exhibits attached to the Complaint include a claim filed with the EEOC, in which Plaintiff alleged that his termination violated the ADA. (*See* Am. Compl., Ex. B.) Defendant argues that, to the extent Plaintiff brings a claim for violation of the ADA, Plaintiff nowhere alleges that he suffers from a disability covered by the ADA. To state a claim for violation of the ADA, a plaintiff must allege that "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Techs.*, 134 F.3d 576,

580 (3d Cir. 1998) (citation omitted). The Amended Complaint fails to make this *prima facie* showing as it fails to include any allegation that Plaintiff has a disability that is covered by the ADA.[8] Indeed, the only allegation that could be construed that Plaintiff suffers from a disability is that Plaintiff was receiving psychotherapy services. The mere fact that a plaintiff received psychiatric treatment, however, is insufficient to establish a disability covered by the ADA. *See Amiot v. Keper Ins. Co.*, 122 F. App'x 577, 580 (3d Cir. 2004). Because Plaintiff fails to allege an essential element of an ADA claim, his wrongful termination claim is dismissed.

### e. Delay in Investigation

In Count Five of his Complaint, Plaintiff brings a claim for delay in investigating discrimination based on Hassel and Munoz's apparent failure to promptly investigate Plaintiff's termination. (*See* Am. Compl. ¶¶ 48–52.) Defendant argues that this claim must be dismissed, because New Jersey does not recognize an independent cause of action for a delayed or negligent investigation. Plaintiff appears to concede that a delay in any investigation of his termination cannot serve as the basis as an independent cause of action.[9] Indeed, Plaintiff contends in his

---

[8] Plaintiff does attach to the Amended Complaint documentation from the Social Security Administration finding him disabled as of December 16, 2018. (Am. Compl., Ex. C.) This documentation, however, is insufficient to show he is disabled for the purposes of the ADA, as the two schemes employ different definitions of disability. *See Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 513 n.5 (3d Cir. 2001) (observing that the ADA and social security regulations employ different standards to assess an individual's disability); *see also Hayes v. Philadelphia Water Dept.*, No. 03-6013, 2005 WL 745857, at *8 n.20 (E.D. Pa. Mar. 31, 2005) ("[U]nlike the social security disability scheme, which employs various presumptions based on listed impairments, the ADA's disability inquiry is made on a case-by case basis."). Also, the Court cannot determine what Plaintiff's disability is based on that document.

[9] An employer's conduct during an investigation may be relevant in determining whether an employer is liable for failure to take remedial action in response to a complaint of discrimination or harassment. *See Griffin v. Harrisburg Prop. Servs., Inc.*, 421 F. App'x 204, 209 (3d Cir. 2011). However, it does not appear that Plaintiff made any complaint of discrimination to human resources prior to his termination that would have required Defendant to take any remedial action.

Opposition that "[t]he delay in investigation count falls under the count of wrongful termination and breach of contract."  (Pl. Opp., at 5.)  To the extent the Amended Complaint can be construed as asserting a claim for delay in investigation, it fails as a matter of law as no such cause of action exists under New Jersey law.  *See Myers v. Atl. Health Sys.*, No. 13-4712, 2017 WL 253846, at *8 n.9 (D.N.J. Jan. 20, 2017) (dismissing negligent investigation claim "because such a cause of action does not exist under New Jersey law"); *Campbell v. Supreme Court of New Jersey*, No. 11-55, 2012 WL 1033308, at *3 n.5 (D.N.J. Mar. 27, 2012) ("[T]his Court concludes that New Jersey law does not recognize 'negligent investigation' as an independent cause of action.").

### IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**.  Plaintiff's negligence and delay in investigation claims are **DISMISSED WITH PREJUDICE**, and Plaintiff's remaining claims are **DISMISSED WITHOUT PREJUDICE**.  Plaintiff is given leave to file a second amended complaint within 30 days of the date of the Order accompanying this Opinion.

DATED: September 28, 2020                    /s/ Freda L. Wolfson
                                                                               Freda L. Wolfson
                                                                               U.S. Chief District Judge