**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| AMIR M. HAMZA,<br><br>                              Plaintiff,<br><br>          v.<br><br>UNITED CONTINENTAL HOLDINGS,<br>LLC, *et al.*,<br><br>                              Defendants. | Civ. Action No. 19-8971 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge**:

Plaintiff Amir M. Hamza ("Plaintiff"), proceeding *pro se*, has filed a Second Amended Complaint ("SAC") against Defendant United Airlines, Inc. ("Defendant" or "United"),[1] bringing various claims related to his termination from employment with Defendant. Presently before the Court is Defendant's Motion to Dismiss the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, Defendant's Motion is **DENIED** in part and **GRANTED** in part. Defendant's Motion is denied with respect to Plaintiff's claims for retaliation and discriminatory termination under the ADA. Defendant's Motion is granted with prejudice with respect to every other claim except for Plaintiff's claim under the Family and Medical Leave Act ("FMLA"), which is dismissed without prejudice. Plaintiff is given leave to

---

[1] Defendant has clarified that the SAC incorrectly names Defendant as "United Continental Holdings, LLC." ECF No. 46 at 1, n.1. In addition, the SAC names as Defendants Oscar Munoz, Mark Di Carlo, Stacy Katz, Mark Hassel, Alex Barreto, Sandra Sales, Mary Sturchio, and Jeffrey Jackel. *See* ECF No. 40. While these Defendants have purportedly been served with the Complaint, *see* ECF No. 12, none have answered the Complaint.

amend his complaint within 30 days of the Order accompanying this Opinion in order to allege facts demonstrating that he was eligible for FMLA benefits and that are otherwise sufficient to state a claim for FMLA interference.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant facts are derived from Plaintiff's SAC and assumed as true for the purposes of this motion.

Plaintiff was employed as a Flight Attendant with United from September 2011 through his termination on December 5, 2018. On April 14, 2018, Plaintiff alleges that he "was the victim of a sexual assault while on a layover at Washington-Dulles International Airport" ("Dulles Airport"). ECF No. 40 ¶1. The perpetrator is allegedly also employed as a Flight Attendant with United. *Id.*[2] Following the assault, Plaintiff alleges that he arrived for a flight leaving Dulles Airport "in dire medical and psychological condition." *Id.* ¶2. The captain of the flight observed that "Plaintiff was 'acting belligerent, his eyes were unfocused, he was jittery, he was rambling and he was having difficulty staying awake.'" *Id.* ¶7. For that reason, the captain notified a United Inflight Supervisor, Alex Barreto ("Barreto"), as to Plaintiff's condition. *Id.* ¶8. According Barreto, who reported to Plaintiff's gate and observed Plaintiff at Dulles Airport the night of April 14, 2018, "Plaintiff was 'disoriented and sweating profusely. He looked pale and his speech was slurred and forced. He could barely keep his eyes open. . . . His thought process was not focused and his conversations were all over the place." *Id.* ¶4.[3] Barreto escorted Plaintiff to the Inflight Office in order to examine

---

[2] Plaintiff otherwise does not allege who committed the assault or where it occurred.

[3] In the SAC, Plaintiff refers to numerous exhibits, which he states are attached to the SAC. However, the SAC contains no attachments. Some of the exhibits to which Plaintiff refers in the SAC appear to have been attached as exhibits to his First Amended Complaint, but the exhibit numbers do not match.

Plaintiff's condition, where he was joined by another United employee, Sandra Sales ("Sales"). Plaintiff alleges that neither Barreto nor Sales contacted emergency medical services.

Barreto and Sales called for a "test facilitator" to test Plaintiff for substances at the airport. *Id.* ¶8. The test facilitator allegedly arrived at 1:50 AM on April 15, 2018, which was over four hours after Plaintiff arrived at the airport for his flight. *Id.* ¶9. Plaintiff does not state definitively whether he had taken any substances that are controlled under United's Substance Abuse Policy, and he does not include the results of the test administered on April 15, 2018. He also alleges that he did not receive "any documentation related to the . . . 'alleged substance' in the test sample" and that he "did not voluntarily consume any substance which violates Defendant's Substance Abuse Policy." *Id.* ¶¶191-99. However, Plaintiff also explains that United maintains an "Employee Assistance Program [("EAP")]," and that, "[i]n this case, a flight attendant who tests positive for questionable substances would be required to communicate with the EAP coordinator to determine what course of action must be taken for the employee to return to a safety related position." *Id.* ¶85.

Following the alleged sexual assault on April 14, 2018, "Plaintiff was unable to return to work," through his termination in December 2018, "due to the psychological disorders he suffered" as a result of the incident. *Id.* ¶11. During this period, Plaintiff allegedly "substantiated his absence from work," as required under the Collective Bargaining Agreement ("CBA") between United and its flight attendants, "by providing medical notes from" Marcelo Abramovich ("Abramovich"), a Licensed Clinical Social Worker (LCSW), who saw Plaintiff intermittently during his absence from work. *Id.* ¶¶10-11. According to Plaintiff's allegations, "[c]ontinued observation by [Abramovich] revealed Plaintiff suffered from manic depression, trust issues, anxiety, paranoia, panic attacks, insomnia followed by extreme exhaustion, sleep deprivation, and other psychological disorders." *Id.* ¶10.

During Plaintiff's absence, he went through a process with Defendant in an attempt to secure medical leave. Plaintiff alleges that United employees Mark Di Carlo ("Di Carlo") and Mary Sturchio ("Sturchio"), who were overseeing Plaintiff's absence and interacted with Plaintiff regarding his leave application, "made it extremely difficult for Plaintiff to take the time he needed to recover." *Id.* ¶11. Di Carlo requested that Plaintiff provide a police report associated with the alleged sexual assault. Plaintiff alleges that he attempted to file a police report by phone with the Fairfax County Police Department in Virginia (the "Department") a month after the incident, but that the Department required such reports to be submitted in person. *Id.* ¶20. Plaintiff allegedly drove to Fairfax County and filed a report in person, but the Department was unable to provide a report identification number until after the investigation was complete. *Id.* ¶113. Plaintiff alleges that, before Di Carlo took over Plaintiff's case, Plaintiff informed United Inflight Supervisor Navi Johal ("Johal") that he filed the report and that Detective Cheetham from the Department (the "Detective"), who was assigned to investigate the alleged assault, would contact Johal. On July 23, 2018, Di Carlo took over United's oversight of Plaintiff's absence from Johal, *id.* ¶115, and it is not clear from Plaintiff's allegations whether he ever provided evidence of the police report to Johal or Di Carlo.

Plaintiff also alleges that "Di Carlo falsified information to Detective Cheetham" when the Detective contacted Di Carlo regarding Plaintiff's sexual assault allegations. *Id.* ¶13. Specifically, Plaintiff alleges that—according to the Detective—Di Carlo told the Detective that Plaintiff "was enrolled in a 'Substance Abuse Program.'" *Id.* ¶84. Plaintiff alleges that Defendant does not maintain a "Substance Abuse Program," but rather provides employees with an EAP "to assist them in a variety of different matters," including, "[i]n this case," determining "what course of action must be taken for [an] employee to return to a safety related position" after the employee tests positive "for questionable substances." *Id.* ¶85.

Plaintiff further alleges that Di Carlo requested documentation of the medical conditions that necessitated Plaintiff's absence. *E.g.*, *id.* ¶¶219-20. Plaintiff alleges that he provided notes from Abramovich discussing Plaintiff's conditions and treatment sessions. *Id.* ¶11. Di Carlo allegedly stated that the notes were "being 'reviewed'" but "never provided a response to whether there were any issues with the letter," and instead "sent a FedEx letter stating the Plaintiff needed to provide documentation but didn't explain what happened to the documentation [Plaintiff] provided earlier." *Id.* ¶220. Plaintiff does not elaborate on the "documentation" Di Carlo requested, but he notes that Di Carlo sent Plaintiff multiple letters requesting documentation during this period. *Id.* Plaintiff further alleges that "[b]etween July 24, 2018," when Di Carlo took over his case for United, "and November 13, 2018, . . . [Di Carlo and Sturchio] failed to inform Plaintiff that [Abramovich] wouldn't qualify to complete" the documentation necessary to grant Plaintiff medical leave. *Id.* ¶176. Ultimately, Plaintiff alleges that he "became extremely agitated by the letter," that "[t]he list of documents requested became daunting," and that "[he] couldn't manage to figure out how to attend to each demand." *Id.* ¶221.

Plaintiff was ultimately terminated on December 5, 2018. According to the SAC, Defendant terminated Plaintiff "because they weren't satisfied with the medical information [Plaintiff] provided." *Id.* ¶224.

Plaintiff filed his initial Complaint in this matter on March 26, 2019. ECF No. 1. On October 25, 2019, Defendant filed a Motion for More Definite Statement and Motion to Dismiss. ECF No. 15. On December 30, 2019, the Court granted Defendant's Motion for More Definite Statement but denied the Motion to Dismiss without prejudice and ordered Plaintiff to file an amended complaint, ECF No. 18, which Plaintiff timely filed on January 28, 2020. ECF No. 19. Plaintiff's First Amended Complaint ("FAC") asserted claims for negligence, breach of contract, wrongful termination, intentional infliction of emotional distress, and delay in investigation. Defendant filed

a Motion to Dismiss the FAC on February 12, 2020, ECF No. 20, and in his Opposition, Plaintiff asserted eight new causes of action, as well as new factual allegations, none of which were set forth in the FAC. ECF No. 22.[4] This Court issued an Opinion and Order resolving Defendant's Motion to Dismiss on September 28, 2020, in which the Court dismissed Plaintiff's negligence and delay in investigation claims with prejudice, dismissed the remaining claims without prejudice, and granted Plaintiff leave to amend his FAC in order to include the additional counts in a second amended complaint. ECF Nos. 38, 39.

Plaintiff filed his SAC on October 28, 2020. ECF No. 40. The SAC alleges fourteen counts: breach of contract (Counts One and Nine); wrongful discharge (Counts Two and Ten); unlawful imprisonment (Count Three); intentional infliction of emotional distress ("IIED") (Count Four); violations of the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d-1 *et seq.* (Count Five); invasion of privacy (Counts Six and Twelve); defamation (Count Seven); employment discrimination (Count Eight); excessive burden (Count Eleven); violations of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (Count Thirteen); and violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (Count Fourteen). On December 14, 2020, Defendant filed a Motion to Dismiss the SAC for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)[5] and failure to state a claim pursuant to Rule 12(b)(6). ECF No. 43-1. Plaintiff filed his Opposition on January 20, 2021, in which he appears to only contest

---

[4] This case was initially assigned to the Honorable Esther Salas, U.S.D.J., and the case was reassigned to this Court on July 28, 2020. ECF No. 37.

[5] Defendant's Motion asserting lack of subject matter jurisdiction applies only to Plaintiff's claim for breach of the parties' Collective Bargaining Agreement, which Defendant argues is subject to binding arbitration, as discussed *infra*.

Defendant's Motion with respect to the IIED claim. ECF No. 45. Defendant filed its Reply on January 22, 2021. ECF No. 46.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)

In reviewing a motion to dismiss pursuant to Rule 12(b)(1), the Court must assess whether the plaintiff has satisfied his burden to demonstrate that subject matter jurisdiction exists. *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 191, n.4 (3d Cir. 2011); *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009). "A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). Where, as here, a party asserts a facial challenge to subject matter jurisdiction "without disputing the facts alleged in the complaint," the Court must "consider the allegations of the complaint as true." *Id.*

### B.   Rule 12(b)(6)

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation omitted); *see also Zimmerman v. Corbett*, 873 F.3d 414, 417-18 (3d Cir. 2017), *cert. denied* 138 S. Ct. 2623 (2018); *Revell v. Port Auth. Of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). While Federal Rule of Civil Procedure 8(a)6 does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right

to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As a *pro se* litigant, Plaintiff is entitled to liberal construction of his complaint. *See Liggon–Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011). To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.    DISCUSSION

### A.      Counts One and Nine: Breach of Contract

Between Counts One and Nine, Plaintiff appears to assert a breach of contract claim on four separate grounds: first, based on a Collective Bargaining Agreement ("CBA") between Plaintiff, Defendant, and the Association of Flight Attendants (AFA), a union representing Plaintiff; second, based on an implied contract, which purportedly derives from certain United policies and procedures; third, based on an employer's duty to "furnish a place of employment which shall be reasonably safe and healthful for employees," pursuant to the New Jersey Worker Health and Safety Act ("NJWHSA"), N.J.S.A. 34:6A-3; and fourth, based on Defendant's alleged failure to investigate.

To state a claim for breach of contract under New Jersey law, a plaintiff must allege: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

### 1.      Collective Bargaining Agreement (Count One)

Without specifying a particular provision, Plaintiff asserts that his termination violates the CBA, ECF No. 40 ¶17, which allegedly entitled Plaintiff to medical leave. *Id.* ¶163. Defendant argues that Plaintiff's claim based on the CBA fails for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) because it is preempted by the Railway Labor Act ("RLA"), 45 U.S.C. §151 *et. Seq*, which Plaintiff does not appear to contest.

The RLA applies to air carriers, including United. 45 U.S.C. § 181. Pursuant to the RLA, "disputes between an employee . . . and a carrier . . . growing out of grievances, or the interpretation or application of agreements concerning rates of pay, rules, or working conditions," shall be handled in the first instance by the carrier. 45 U.S.C. § 184. If the parties fail to reach an agreement, they must submit their dispute to arbitration before "an appropriate adjustment board." *Id.* The Supreme Court recognizes two different types of disputes within this framework: "major" disputes relate to the formation of collective bargaining agreements, whereas "minor" disputes concern the interpretation or application of such agreements. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252-53 (1994). "A minor dispute is subject to a compulsory and binding arbitration before an adjustment board established by the employer and the unions representing the employees, [which] . . . has exclusive jurisdiction over the dispute." *Int'l Ass'n of Machinists & Aerospace Workers v. U.S. Airways, Inc.*, 358 F.3d 255, 260 (3d Cir. 2004). In this regard, the RLA provides the "exclusive" "remedy" for "claim[s] based squarely on an alleged breach of [a] collective-bargaining agreement." *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 566 (1987).

Here, I agree with Defendant that the Court lacks subject matter jurisdiction over Plaintiff's claim for breach of the CBA. As a dispute arising under a collective bargaining agreement with United, Plaintiff's claim is a "minor dispute," and is therefore "subject to a compulsory and binding arbitration before an adjustment board," which has "exclusive jurisdiction over the dispute." *Int'l*

*Ass'n of Machinists & Aerospace Workers*, 358 F.3d at 260. There is no allegation, or documentary support, that this dispute was ever submitted to an adjustment board. Accordingly, Plaintiff's breach of contract claim based on the CBA is dismissed. *See Maher v. New Jersey Transit Rail Operations, Inc.*, 125 N.J. 455, 485 (1991) (holding breach of contract claim constituted "minor" dispute and was therefore preempted by RLA, thereby denying district court subject matter jurisdiction over the claim).

### 2.    Implied Contract (Count One)

Plaintiff alleges that an implied contract was formed with Defendant based on "a collection of documents, including, [Defendant's] Policy and Procedures Manual, Flight Attendant Operations Manual (FAOM), FAA and DOT regulations, training documents, weekly bulletins, public policy regarding airline safety, and public policy and statues [*sic*] regarding employment in New Jersey." ECF No. 40 ¶17. According to Plaintiff, these documents require Defendant to "ensure the safety and well-being of [its] employees." *Id.*

In my Opinion dismissing Plaintiff's FAC, I concluded that Plaintiff failed to establish that a contract existed with Defendant because Plaintiff provided "no details regarding the terms of the policies and procedures such that the Court can determine whether they give rise to an implied right of contract." ECF No. 38 at 10. Here, even assuming that the policies and procedures Plaintiff has listed form the basis of an implied contract, Plaintiff has not established that Defendant breached that contract. As with the FAC, Plaintiff again provides "no details regarding the terms of the policies and procedures." *Id.* Furthermore, Plaintiff does not specify the provision or provisions Defendant allegedly breached, and he does not explain how such a breach occurred. As such, Plaintiff's allegations do not contain "factual content" that would "allow[] the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that Defendant breached an implied contract. Accordingly, Plaintiff's claim for breach of an implied contract is dismissed.

### 3.    NJWHSA (Count One)

Plaintiff next alleges that Defendant breached a contract based on a requirement under the NJWHSA that employers must "furnish a place of employment which shall be reasonably safe and healthful for employees. N.J.S.A. 34:6A-3; ECF No. 40 ¶28-31. However, Plaintiff has not alleged any facts to support his claim that N.J.S.A. 34:6A-3 formed the basis of a contract between Plaintiff and Defendant, and further, there is no private cause of action available to an individual, such as Plaintiff, under this statute. Thus, Plaintiff has failed to establish the existence of a contract based on N.J.S.A. 34:6A-3,[6] and his breach of contract claim premised on the NJWHSA is therefore dismissed.

### 4.    Failure to Investigate (Count Nine)

Finally, Plaintiff alleges that he sent emails to United's Newark Base Manager, Stacy Katz, regarding Di Carlo's alleged "policy and procedure violations," and that a breach of contract occurred when Defendant's employees allegedly failed to investigate Plaintiff's claim. ECF No. 40 at p. 75. Again, Plaintiff's claim for breach of contract on these grounds fails because Plaintiff has not identified a relevant contract between the parties, let alone a provision of a contract that Defendant may have breached. To the extent that Plaintiff seeks to re-plead an independent cause of action for "delay in investigation," the Court dismissed this claim with prejudice in its previous Opinion because "no such cause of action exists under New Jersey law." ECF No. 38 at 14. Thus, whether couched as breach of contract or an independent cause of action, Plaintiff's claim for failure to

---

[6] To the extent that Plaintiff seeks to state an independent claim for a violation of the NJWHSA, this claim fails as well. The NJWHSA specifies that "[t]he commissioner shall enforce the provisions of this act, make complaints against persons violating its provisions and prosecute violations of the same." N.J.S.A. 34:6A-6. A person who is "aggrieved" by an action of the commissioner is entitled to a hearing, N.J.S.A. 34:6A-8, and that person may then appeal a "final order, ruling, or action of the commissioner" to "the Appellate Division of the Superior Court of New Jersey." N.J.S.A. 34:6A-18. However, the NJWHSA does not contain any provision extending a private cause of action to individual plaintiffs. Accordingly, Plaintiff may not bring a cause of action under N.J.S.A. 34:6A-3 against Defendant.

investigate is dismissed.

### B.     Counts Two and Ten: Wrongful Discharge

In Counts Two and Ten, Plaintiff brings claims for wrongful discharge. Count Two alleges common law wrongful discharge based on *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58 (1980), ECF No. 40 ¶32, and Count Ten attempts to state a claim for wrongful discharge based on Defendant's alleged failure to investigate Di Carlo's alleged policy violations. *Id.* at p. 75.

To state a claim for common law wrongful discharge under *Pierce*, Plaintiff must "identify [a] particular public policy [that was] implicated in the termination decision" and demonstrate how his discharge violated that policy. *Bradshaw v. Am. Inst. for History Educ.*, Civ. No. 12-1367, 2013 WL 1007219, at *5 (D.N.J. Mar. 13, 2013). "The sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions." *Pierce*, 84 N.J. at 72. Here, Plaintiff has identified a statute—N.J.S.A. 34:6A-3, related to furnishing a safe workplace—and he asserts that "[b]y violating New Jersey Statute 34:6A-3 . . . Defendant becomes liable under the Count of Wrongful Discharge." ECF No. 40 ¶¶30-32. As best the Court can discern, Plaintiff alleges that Defendant violated N.J.S.A. 34:6A-3 by providing inadequate medical care to Plaintiff at Dulles Airport on April 14, 2018. *Id.* ¶¶20-21. However, even accepting, without deciding, the tenuous assertion that Defendant's conduct on April 14, 2018, violated N.J.S.A. 34:6A-3, Plaintiff has not alleged any facts to support a claim that his *termination* violated N.J.S.A. 34:6A-3, or was connected in any way to Defendant's compliance with that statute. Accordingly, Plaintiff has failed to state a claim for common law wrongful discharge under *Pierce*.

Count Ten alleges that Plaintiff was "wrongfully discharged" based on Defendant's "fail[ure] to properly investigate" Di Carlo's alleged "policy and procedures violations." ECF No. 40 at p. 75. With respect to wrongful discharge under *Pierce*, this claim fails because Plaintiff has not identified any public policy that Defendant's purported failure to investigate could have violated, let alone one

that had any connection to Plaintiff's termination. *Bradshaw*, 2013 WL 1007219, at *5. To the extent that Plaintiff seeks to re-assert his "delay in investigation" claim as one for wrongful discharge, that claim fails as a matter of law because, again, "no such cause of action exists under New Jersey law." ECF No. 38 at 14.

###   C.   Count Three: Unlawful Imprisonment

In Count Three, Plaintiff alleges that certain United employees unlawfully imprisoned him at Dulles Airport on April 14, 2018, by "imprisoning him in the Inflight Base Office while they, without any medical experience, gaged his medical condition." ECF No. 40 ¶34.

To state a claim for false imprisonment, the term used in New Jersey for the tort that Plaintiff labels unlawful imprisonment, a plaintiff must allege "(1) an arrest or detention of the person against his . . . will and (2) lack of proper legal authority or legal justification." *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 591 (2009). Detention "may be effectuated by force or by threats of force communicated through conduct or words." *Maietta v. United Parcel Serv., Inc.*, 749 F. Supp. 1344, 1367 (D.N.J. 1990). "A person is falsely imprisoned when [his] freedom of movement is constrained." *Id.*

At the outset, the Court agrees with Defendant that Plaintiff's false imprisonment claim is barred by the statute of limitations. "[A] statute of limitations defense is usually unavailable in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), [but] an exception arises 'where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.'" *Cty. Of Hudson v. Janiszewski*, 520 F. Supp. 2d 631, 649 (D.N.J. 2007) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 1 (3d Cir.1994)). "[T]he applicable statute of limitations is governed by state law," *id.*, and under New Jersey law "[t]he statute of limitations for constitutional and common law false imprisonment claims . . . is two years." N.J.S.A. 2A:14-2; *Torres v. Twp. of N. Bergen*, Civ. No. 08-5890, 2010 WL 56043,

at *3 (D.N.J. Jan. 5, 2010). "[F]ederal law governs when the cause of action accrued," *Janiszewski*, 520 F. Supp. 2d at 649, and under federal law, the statute of "[l]imitations begin[s] to run against an action for false imprisonment when the alleged false imprisonment ends." *Wallace v. Kato*, 549 U.S. 384, 389 (2007). Here, Plaintiff's alleged false imprisonment ended in April 2018, and the two-year statute of limitations had expired when Plaintiff first raised a claim for false imprisonment in the SAC, which he filed on October 28, 2020. Thus, I may consider Defendant's statute of limitations defense because "the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Janiszewski*, 520 F. Supp. 2d at 649. Because Plaintiff first asserted his false imprisonment claim more than two years after that cause of action accrued, his claim is barred by the statute of limitations.

Furthermore, the statute of limitations notwithstanding, Plaintiff has failed to state a claim for false imprisonment. Plaintiff alleges that United employees "unlawfully imprisoned [him] by barring him from leaving the IAD Inflight Office to seek out medical assistance" and that he "was held without his consent." ECF No. 40 ¶¶35, 37. However, Plaintiff has not alleged any facts explaining how these employees "barr[ed]" him from leaving. For example, Plaintiff does not allege that the employees used "force or a threat of force." *Powell v. Verizon*, Civ. No. 19-8418, 2019 WL 4597575, at *12 (D.N.J. Sept. 20, 2019). Moreover, even assuming Defendant barred him from leaving Dulles Airport, Plaintiff has not demonstrated that the employees lacked a "legal justification," *Leang*, 198 N.J. at 591, for requiring him to remain at the airport in order to complete a test that would determine whether he was in a safe condition to fly. To the contrary, Plaintiff concedes that he "is not arguing against the need of the urinalysis and its relationship to the safety related position as a Flight Attendant." ECF No. 40 ¶194. Accordingly, Plaintiff has failed to state a claim for false imprisonment, and this claim is dismissed.

**D.      Count Four: Intentional Infliction of Emotional Distress**

Plaintiff's claim for IIED alleges, in effect, that Di Carlo caused Plaintiff severe emotional distress by notifying the Detective investigating Plaintiff's sexual assault allegations that "Plaintiff was enrolled in a 'Substance Abuse Program.'" *Id.* ¶84. Defendant contends that Plaintiff has failed to establish multiple elements of an IIED claim. ECF No. 43-1 at 30-34.

To state a claim for intentional infliction of emotional distress, Plaintiff must allege facts demonstrating that: "(1) [] Defendant[] acted intentionally or recklessly, both in doing the act and in producing emotional distress; (2) [] [Defendant's] conduct was so outrageous in character and extreme in degree as to go beyond all bounds of decency; (3) [] [Defendant's] actions were the proximate cause of the emotional distress; and (4) that the emotional distress suffered was so severe that no reasonable person could be expected to endure it." *Weber v. Don Longo Inc.*, Civ. No. 15-2406, 2018 WL 1135333, at *18 (D.N.J. Mar. 2, 2018) (citing *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366 (1988)).

Here, Plaintiff has not pleaded facts sufficient to establish the requisite intent. Plaintiff alleges that "Di Carlo had the intent of creating severe emotional distress on Plaintiff by falsifying information to the Detective." ECF No. 40 ¶108. As context surrounding this claim, Plaintiff alleges that "Defendant does not maintain a 'Substance Abuse Program,'" in which Di Carlo allegedly told the Detective Plaintiff was enrolled. *Id.* ¶¶84-85. Rather, Plaintiff notes that "Defendant provides employees with an [EAP]," and that, "[i]n this case, a flight attendant who tests positive for questionable substances would be required to communicate with the EAP coordinator to determine what course of action must be taken for the employee to return to a safety related position." *Id.* ¶85. Within this program, Plaintiff alleges that "[s]everal different routes can be taken to ascertain the employee's condition through evaluations, counseling considerations, testing procedures, etc. Defendant does not provide substance abuse counseling, or anything related to it." *Id.* ¶86. These

allegations, taken as true, suggest that Di Carlo understood Plaintiff to have been placed in a program for "a flight attendant who tests positive for questionable substances," and that Di Carlo at most may have mislabeled the program in his conversation with the Detective. I am unable to infer based on Di Carlo's mischaracterization of the EAP, in which Plaintiff was enrolled, that Di Carlo intended to cause Plaintiff severe emotional distress or acted with "deliberate disregard of a high degree of probability that [such] distress would follow." *Buckley*, 111 N.J. at 366.

Furthermore, Plaintiff has not sufficiently alleged extreme and outrageous conduct. In my Opinion dismissing Plaintiff's claim for intentional infliction of emotional distress in the FAC, I concluded that Plaintiff had failed to allege facts demonstrating that Di Carlo "engaged in any 'extreme and outrageous conduct.'" ECF No. 39 at 11. I noted that, "[s]imply put, Plaintiff alleges that Di Carlo misrepresented Plaintiff's medical history to the detective and painted Plaintiff to be a liar." *Id.* However, "[e]ven if that were true," I concluded that "such conduct is not so extreme and outrageous to form a basis for an IIED claim." *Id.* (citing *Kennedy v. American Airlines Inc.*, 195 F. Supp. 3d 646, 658 (D.N.J. 2016)). Here, although Plaintiff has expanded the allegations underlying his IIED claim, they still amount to nothing more than a claim that Di Carlo "misrepresented Plaintiff's medical history to the detective and painted Plaintiff to be a liar." ECF No. 39 at 11. As I concluded in my previous Opinion, even accepting these allegations as true, they are not sufficient to establish extreme and outrageous conduct.

### E.     Count Five: HIPAA and VHRPA

In Count Five, Plaintiff appears to assert a claim pursuant to HIPAA, or, in the alternative, pursuant to the Virginia Health Records Privacy Act, VA Stat. § 32.1-127.1:03 ("VHRPA"). The conduct which allegedly underlies these claims is not entirely clear from the SAC. Plaintiff alleges that "a significant number of employees of Defendant had access to Plaintiff's personal medical information." ECF No. 40 ¶137. Nevertheless, based on other allegations in the SAC, the Court

assumes that Plaintiff's claim pursuant to HIPAA or the VHRPA derives in part from Di Carlo's alleged disclosure to the Detective that Plaintiff was enrolled in a substance abuse program. Defendant argues that Plaintiff is unable to bring a claim under either statute. I agree with Defendant that Plaintiff's claim fails, either under the VHRPA or HIPAA.

The VHRPA provides that "no health care entity, or other person working in a health care setting, may disclose an individual's health records." Va. Stat. § 32.1-127.1:03(A). The statute further provides that "[n]o person to whom health records are disclosed shall redisclose or otherwise reveal the health records of an individual . . . without first obtaining the individual's specific authorization." *Id.* A "health record" is "any written, printed or electronically recorded material maintained by a health care entity," which the statute defines as any "health care provider, health plan or health care clearinghouse." Va. Stat. § 32.1-127.1:03(B). As relevant here, a "health care provider" is "(i) a person, corporation, facility or institution licensed by [Virginia] to provide health care or professional services as a physician or hospital, dentist, pharmacist, registered nurse or licensed practical nurse[,] [or] [(ii)] a corporation, partnership, limited liability company or any other entity, . . . which employs or engages a licensed health care provider and which primarily renders health care services." *Id.*; Va. Stat. § 8.01-581.1. Based on these definitions, United does not qualify as a "health care entity." Furthermore, because a "health record" is defined as "material maintained by a health care entity," Plaintiff's information that Di Carlo or another employee of Defendant allegedly disclosed, is not covered under the statute's requirement that "[n]o person . . . shall redisclose" a patient's health records. Accordingly, Plaintiff is unable to assert a claim under the VHRPA. *See Shumate v. City of Martinsville*, 90 Va. Cir. 122 (2015), *aff'd*, No. 151285, 2016 WL 5327477 (Va. Sept. 22, 2016) (concluding "[t]here is nothing in the statute that requires extending application of [tortious dissemination] to those who are not health care providers").

To the extent that Plaintiff brings a claim under HIPAA, "that claim cannot go forward as

HIPAA creates no private federal remedy." *Wolf v. New Jersey*, Civ. No. 17-2072, 2018 WL 1942522, at *6 (D.N.J. Apr. 23, 2018); *Hatfield v. Berube*, 714 Fed. App'x 99, 105-06 (3d Cir. 2017) ("HIPAA does not create a private right of action for alleged disclosures of confidential medical information[.]") (internal citations and quotation marks omitted).

### F.    Counts Six and Twelve: Invasion of Privacy

In Counts Six and Twelve, Plaintiff brings two separate claims for invasion of privacy. Count Six alleges that Di Carlo placed Plaintiff in a false light by sharing his medical information with the Detective. ECF No. 40 ¶¶138-43. Count Twelve alleges intrusion upon seclusion based on a United employee's presence during a urine test administered to Plaintiff on April 15, 2018. *Id.* ¶¶191-99. Both claims fail.

#### 1.    False Light

To state a claim for false light, Plaintiff must allege facts showing that Defendant "g[a]ve publicity to a matter concerning [Plaintiff] that places [Plaintiff] before the public in a false light [and] (a) the false light in which [Plaintiff] was placed would be highly offensive to a reasonable person, and (b) [Defendant] had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which [Plaintiff] would be placed." *Williams v. Verizon N.J., Inc.*, Civ. No. 19-09350, 2020 WL 1227663, at *13 (D.N.J. Mar. 12, 2020) (quoting *Romaine v. Kallinger*, 109 N.J. 282, 290 (1988)).

Here, Plaintiff's false light claim fails because his allegations do not establish the falsity of Di Carlo's remarks to the Detective, or that Di Carlo acted with reckless disregard as to their potential falsity. Plaintiff alleges that Di Carlo's statement was false because Defendant does not maintain a "Substance Abuse Program," without providing any allegations related to Di Carlo's description of this program. However, Plaintiff acknowledges that Defendant does maintain an EAP, and that "[i]n this case, a flight attendant who tests positive for questionable substances would be required to

communicate with the EAP coordinator to determine what course of action must be taken for the employee to return to a safety related position." ECF No. 40 ¶85. Plaintiff also concedes that Defendant tested him for substances in accordance with its Substance Abuse Policy, and he does not appear to dispute the allegations that he used a substance in violation of Defendant's policy. *Id.* ¶¶191-92, 194, 197 (disputing allegations that Plaintiff violated Defendant's Substance Abuse Policies on grounds that "Defendant failed to properly administer the testing" and that "Plaintiff has yet to receive any documentation related to the . . . 'alleged substance' in the test sample"). In fact, Plaintiff appears to tacitly concede that he did use a substance in violation of the policy. *Id.* ¶¶198-99 (stating "Plaintiff did not *voluntarily* consume any substance which violates Defendant's Substance Abuse Policy" and acknowledging "the intentionally forced violation by Plaintiff of a Defendant's policies . . . by one of Defendant's employees") (emphasis added). Therefore, the Court infers from Plaintiff's allegations that he participated in a program through United related to the use of substances in violation of United's policies. As such, Plaintiff's allegations do not establish the falsity of Di Carlo's statement, as required to state a claim for false light.

Furthermore, Plaintiff has also failed to establish the publicity element of a false light claim. "'Publicity' means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. . . . Thus it is not an invasion of the right to privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 622 (3d Cir. 1996) (citing *Restatement (Second) of Torts* § 652D, cmt. a) (applying Restatement definition to claim for public disclosure of private information), *abrogation on other grounds recognized in Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773 (3d Cir. 2001); *see also Restatement (Second) of Torts* § 652E, cmt. a (adopting for false light tort the definition of publicity provided for tort of public disclosure of private information).

Here, Plaintiff only alleges that Di Carlo told one person—the Detective, who was investigating Plaintiff's sexual assault allegations—that Plaintiff was enrolled in a "Substance Abuse Program." That is not sufficient to establish publicity. Accordingly, Plaintiff has failed to state a claim for false light, and this claim is dismissed.

### 2.    Intrusion Upon Seclusion

Plaintiff's claim for intrusion upon seclusion is based on "the method" used in administering a urinalysis test to Plaintiff and, specifically, the test facilitator's observation of Plaintiff in the bathroom at Dulles Airport while he was urinating. ECF No. 40 ¶¶192, 194.

To state a claim for intrusion upon seclusion, Plaintiff must allege facts showing 1) that Defendant "intentionally intrude[d], physically or otherwise, upon the solitude or seclusion of [Plaintiff] or his private affairs or concerns," and 2) that such "intrusion would be highly offensive to a reasonable person." *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 94-95 (1992) (quoting *Restatement (Second) of Torts*, § 652B (1977)). The intrusion "need not be physical," and it may arise based on "the use of the defendant's senses [] to oversee or overhear the plaintiff's private affairs" or an "investigation or examination into [Plaintiff's] private concerns." *Id.* at 95. Plaintiff "need not prove publication of any information." *Id.*

The Supreme Court of New Jersey has not directly addressed a claim for intrusion upon seclusion related to an employer's urinalysis program. However, in *Hennessey*, the Court recognized that common law intrusion upon seclusion constitutes a public policy protecting a right to privacy that could form the basis of a wrongful discharge claim, and the Court considered whether an employer's urinalysis program violated that public policy. 129 N.J. at 94-95, 99-100, 106-07. To make that determination, the Court balanced the individual's right to privacy against the public's interest in the urinalysis program. *Id.* at 102. As relevant here, the defendant in *Hennessey*, an oil refinery, maintained a random drug testing policy using urinalysis, and as part of that program, "an

observer monitored the employee while giving the sample to avoid submission of counterfeit samples." *Id.* at 86. The Court concluded that, due to the "safety-sensitive nature" of the plaintiff's job at the refinery, the public's interest in safety outweighed the plaintiff's interest in privacy. *Id.* at 107. The Court did note that employers must "implement measures designed to minimize the intrusiveness of the testing process," including "a testing procedure that allows as much privacy and dignity as possible." *Id.* at 106. However, based on the provisions of the employer's testing program in *Hennessey*, the Court affirmed the Appellate Division's determination that the program did not violate public policy. *Id.* at 107.

Based on *Hennessey*, Plaintiff has not alleged facts sufficient to demonstrate that Defendant's urinalysis program constitutes an intrusion upon seclusion. Plaintiff does not dispute that, as a flight attendant, he occupied a "safety-sensitive job[]." *Id.* at 106. ECF No. 40 ¶194 ("Plaintiff is not arguing against the need of the urinalysis and its relationship to the safety related position as a Flight Attendant"). Furthermore, following *Hennessey*, the mere observation during a urinalysis test of an employee who occupies a "safety-sensitive job[]" is not sufficient to violate the employee's right to privacy. *See id.* at 86, 107. Plaintiff has not alleged that Defendant failed to "implement measures designed to minimize the intrusiveness of the testing process." *Id.* at 106. Neither has Plaintiff alleged that the employee monitored him in a manner other than that which was necessary to "avoid submission of counterfeit samples." *Id.* at 86. Accordingly, Plaintiff has failed to state a claim for intrusion upon seclusion.[7]

---

[7] Plaintiff's citation on this point to *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611 (3d Cir. 1992), is inapposite. *Borse* concluded that a urinalysis program could violate the right to privacy under Pennsylvania—not New Jersey—law. *Id.* at 621. Moreover, *Borse* was decided before the Supreme Court of New Jersey's decision in *Hennessey*, and *Borse* acknowledges that the Appellate Division's decision in *Hennessey* concluded that the urinalysis program at issue there did not violate the right to privacy in New Jersey. *Id.* at 624.

G.     **Count Seven: Defamation**

In Count Seven, Plaintiff alleges defamation based on Di Carlo's alleged statement to the Detective regarding Plaintiff's enrollment in a "substance abuse program." ECF No. 40 ¶146. Defamation claims in New Jersey are subject to a one-year statute of limitations, which begins to run on the date of "the publication of the alleged libel or slander." N.J.S.A. 2A: 14-3. Because the events underlying Plaintiff's defamation claim occurred in April 2018, and Plaintiff did not raise his defamation claim until he filed his SAC on October 28, 2020, the defamation claim is barred by the one-year statute of limitations. *See Ahn v. Cigna Health & Life Ins. Co.*, Civ. No. 19-07141, 2019 WL 5304628, at *5 (D.N.J. Oct. 21, 2019).[8] Accordingly, Plaintiff's defamation claim is dismissed.

H.     **Count Eight: Employment Discrimination**

In Count Eight, Plaintiff alleges a vague claim for employment discrimination, without citing to a particular statute, regulation, or rule that could form the basis of his claim. To be clear, other than disability discrimination, which the Court addresses *infra*, Plaintiff does not allege that he faced discrimination based on his sex, sexual orientation, race, national origin, or any other protected class. Nevertheless, the Court will construe this claim as an extension of Plaintiff's claim for wrongful discharge. Plaintiff appears to assert three different bases for wrongful discharge under this Count: first, that he was discharged in spite of his strong performance; second, that Defendant created an "excessive burden" by requesting information while processing Plaintiff's request for leave; and third, by violating the CBA. Each of these grounds is insufficient to state a claim.

---

[8] Even if Plaintiff's claim satisfied the statute of limitations, it still fails to state a claim. To state a claim for defamation, Plaintiff must allege facts demonstrating "(1) that [Defendant] made a false and defamatory statement concerning [Plaintiff]; (2) that the statement was communicated to another person (and not privileged); and (3) that [Defendant] acted negligently or with actual malice." *G.D. v. Kenny*, 205 N.J. 275, 292-93 (2011). Here, for the reasons discussed *supra* in connection with Plaintiff's IIED and false light claims, Plaintiff has not adequately alleged the falsity of Di Carlo's remarks, and he therefore has failed to satisfy the first element of a defamation claim.

With respect to Plaintiff's claim that he was terminated despite his allegedly strong performance, ECF No. 40 ¶¶148, 151-163, I already rejected this claim in my Opinion dismissing the FAC, ECF No. 38 at 11-12, and Plaintiff does not raise any reason for me to revisit that decision here.

As for Plaintiff's claim that Defendant's requests for information created an "excessive burden," ECF No. 40 ¶¶168-86, Plaintiff has not cited to any source of public policy, law or rule creating a cause of action for wrongful discharge on this basis. To the contrary, it is well established that employers may request information from an employee when processing a request for medical leave. *See, e.g.*, *Tatum v. Hosp. of Univ. of Pennsylvania*, 57 F. Supp. 2d 145, 149 (E.D. Pa. 1999), *aff'd*, 216 F.3d 1077 (3d Cir. 2000) ("The Third Circuit has clearly held that a plaintiff must provide her employer with sufficient information regarding her disability. After receiving a request for an accommodation, an employer has the right and obligation to request additional information the employer believes it needs."). Moreover, although the SAC exhaustively documents Plaintiff's interactions with Defendant between April and December 2018, he does not identify any specific request from Defendant that he believes was "excessive," let alone articulate why such a request was unnecessary. Plaintiff insinuates that Di Carlo's request for an in-person meeting to discuss a note from Plaintiff's psychotherapist, Abramovich, was unreasonable, *e.g.*, ECF No. 40 ¶¶ 187, 189, but Plaintiff has not identified any public policy that such a request might violate. Thus, Plaintiff has failed to state a claim for wrongful discharge based on Defendant's requests for information related to Plaintiff's medical leave.

Finally, to the extent that Plaintiff seeks to base his wrongful discharge claim on the CBA, I agree with Defendant that this claim is preempted by the Railway Labor Act, primarily for the reasons discussed *supra* with respect to Plaintiff's breach of contract claim. In *Maher*, the Supreme Court of New Jersey concluded that the RLA did not preempt a claim under the New Jersey Conscientious

Employee Protection Act ("CEPA"), in which the plaintiff alleged that his employer terminated him in retaliation for reporting the employer's legal violations. *Maher*, 125 N.J. at 470-71. And, as the Supreme Court of New Jersey has recognized, CEPA codified the preexisting cause of action for common law "wrongful[] discharge[] in violation of 'a clear mandate of public policy,'" *D'Annunzio v. Prudential Ins. Co. of America*, 192 N.J. 110, 119 (2007), which Plaintiff invokes here. However, *Maher* is distinguishable from this case. There, the court concluded that the RLA did not preempt the plaintiff's CEPA claim because the plaintiff's "claim of retaliatory discharge d[id] not in any way turn on an interpretation of the" applicable collective bargaining agreement. 125 N.J. at 471. Therefore, Plaintiff's claim did not qualify as a "minor dispute" that was subject to binding arbitration. *Id.* at 469. Here, as best the Court can discern, Plaintiff's wrongful discharge claim turns directly on an interpretation of the CBA's leave provisions. ECF No. 40 ¶164 (arguing that "Plaintiff was qualified for [certain] leaves of absence made available to him [under the CBA]"). Therefore, Plaintiff's claim qualifies as a "minor dispute" and is therefore preempted by the RLA. *Maher*, 125 N.J. at 480 ("[W]e rule that [the plaintiff's] complaint is a minor dispute because plaintiff's challenge to every allegedly-discriminatory action of [the defendant] concerns a provision of the collective-bargaining agreement.").

## I.    Count Eleven: Excessive Burden

In Count Eleven, Plaintiff attempts to assert a claim for "excessive burden" based on Defendant's requests in connection with Plaintiff's medical leave. ECF No. 40 ¶187. However, Plaintiff has not cited to any case law, statutes, or rules creating a cause of action for "excessive burden." As such, this claim is dismissed. To the extent that Plaintiff seeks to assert a claim for wrongful discharge based on the allegedly excessive burden Defendant imposed, this claim is dismissed for the reasons discussed *supra* with respect to Count Eight.

J.       **Count Thirteen: Family and Medical Leave Act**

In Count Thirteen, Plaintiff asserts a claim for interference with his benefits under the FMLA (hereinafter a "FMLA interference" claim). Plaintiff alleges that he applied for leave under the FMLA to recover from the alleged sexual assault on April 14, 2018, but his request was denied because he did not have enough qualifying hours under the statute. ECF No. 40 ¶201. Defendant contends that Plaintiff's FMLA interference claim fails because he has not adequately alleged his eligibility for FMLA benefits. ECF No. 43-1 at 44.

The FMLA provides that an "eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" where the employee suffers from a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). In general, an "eligible employee" is one who "has been employed (i) for at least 12 months by the employer . . . and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." *Id.* § 2611(2)(A). With respect to an employee who is a "flight attendant or flight crewmember," as is the case for Plaintiff, the employee meets the requisite "hours of service" requirement under § 2611(2)(A)(ii) when "the employee has worked or been paid for not less than 60 percent of the applicable total monthly guarantee, or the equivalent, for the previous 12-month period . . . and . . . has worked or been paid for not less than 504 hours (not counting personal commute time or time spent on vacation leave or medical or sick leave) during the previous 12-month period." *Id.* § 2611(2)(D)(1). For a flight attendant who is not on reserve status, the "applicable monthly guarantee" means "the minimum number of hours for which an employer has agreed to schedule such employee for any given month[,] . . . as established in the applicable collective bargaining agreement or, if none exists, in the employer's policies." *Id.* § 2611(2)(D)(iii)(I).[9] Courts

_____

[9] If the employee is on reserve status, the "applicable monthly guarantee" is "the number of hours for which an employer has agreed to pay such employee on reserve status for any given month, as

have interpreted the hours-of-service requirement to begin on the date that the plaintiff requests FMLA leave. *See Staunch v. Continental Airlines, Inc.*, 511 F.3d 625, 630-31 (6th Cir. 2008) (concluding flight attendant asserting FMLA claim had not worked requisite hours "in the twelve months preceding her request for leave"); *McArdle v. Town of Dracut/Dracut Public Schs.*, 732 F.3d 29, 31, 33-34 (1st Cir. 2013); *Ross v. Kraft Foods North America, Inc.*, 347 F. Supp. 2d 200, 203 (E.D. Pa. 2004) (plaintiff "did not work sufficient hours in the twelve months prior to his request").

To state a claim for FMLA interference, Plaintiff must allege facts showing that: "(1) he . . . was an eligible employee under the FMLA; (2) [Defendant] was an employer subject to the FMLA's requirements; (3) [Plaintiff] was entitled to FMLA leave; (4) [Plaintiff] gave notice to [Defendant] of his . . . intention to take FMLA leave; and (5) [Plaintiff] was denied benefits to which he or she was entitled under the FMLA." *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014). A plaintiff fails to plausibly allege that he was an "eligible employee" when he alleges that he was employed with the defendant during the previous twelve months but "fails to allege the number of hours he worked during his employment." *Bowie v. Costco Wholesale Corp.*, Civ. No. 16-5808, 2017 WL 3168985, at *8 (D.N.J. July 26, 2017) (concluding that "[w]ithout any factual allegations regarding the total number of hours worked, his weekly schedule, his status as a full-time or part-time employee, or any other relevant allegation, he has not established [that] he worked" the requisite number of hours); *Rodriguez v. JSPLTC, LLC*, Civ. No. 12-6565, 2013 WL 1791145, at *2 (D.N.J. Apr. 25, 2013) (same); *see also Fazio v. N.J. Turnpike Auth.*, Civ. No. 11-3789, 2012 WL 71749, at *6-7 (D.N.J. Jan. 10, 2012).

Here, Plaintiff has failed to adequately allege that he was an "eligible employee" under

---

established in the applicable collective bargaining agreement or, if none exists, in the employer's policies." *Id.* § 2611(2)(D)(iii)(II).

FMLA. Plaintiff alleges that he was denied leave because United Absence Management determined that he did not have enough qualifying hours to receive FMLA benefits. ECF No. 40 ¶201. Although the SAC does not specify the duration of Plaintiff's employment with United, the FAC alleges that Plaintiff was employed with United starting in 2011, ECF No. 19 ¶1, which is sufficient to establish that Plaintiff was employed with Defendant for at least twelve months. However, Plaintiff has not alleged any facts that would support the conclusion that he satisfies the hours-of-service requirement. "Without any factual allegations regarding the total number of hours worked, [his] weekly schedule, [his] status as a full-time or part-time employee, or any other relevant allegation, [he] has not established that [he] worked" the requisite number of hours during the twelve-month period preceding his request for FMLA leave. *Rodriguez*, 2013 WL 1791145, at *2. Accordingly, Plaintiff's claim for FMLA interference is dismissed without prejudice. *See, e.g.*, *id.* (granting Rule 12(b)(6) motion to dismiss FMLA interference claim because Plaintiff failed to allege facts demonstrating her eligibility to receive FMLA benefits). Plaintiff is given leave to amend his SAC in order to plead facts sufficient to demonstrate that he was an "eligible employee" as of July 31, 2018, which is the date on which he allegedly first applied for FMLA benefits. ECF No. 40 ¶201.

When amending his SAC, Plaintiff must also satisfy the other four elements of a FMLA claim: "(2) [Defendant] was an employer subject to the FMLA's requirements; (3) [Plaintiff] was entitled to FMLA leave; (4) [Plaintiff] gave notice to [Defendant] of his . . . intention to take FMLA leave; and (5) [Plaintiff] was denied benefits to which he or she was entitled under the FMLA." *Ross*, 755 F.3d at 191-92. Here, the SAC appears to satisfy the second, fourth, and fifth elements.

The third element is more difficult to discern from the SAC, but I believe Plaintiff could satisfy this element, as well. To demonstrate that he was "entitled to FMLA leave" under the third element, Plaintiff must allege facts showing that he suffered from a "serious health condition that [made him] . . . unable to perform the functions of [his] position" with Defendant. 29 U.S.C. §

2612(a)(1)(D). A "'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves[] (A) inpatient care in a hospital, hospice, or residential medical care facility[,] or (B) continuing treatment by a health care provider." *Id.* § 2611(11). A "health care provider" is "(A) a doctor of medicine . . . who is authorized to practice medicine . . . by the State in which the doctor practices[,] or (B) any other person determined by the Secretary [of Labor] to be capable of providing health care services." *Id.* § 2611(6). The Secretary of Labor has determined that "clinical social workers . . . who are performing within the scope of their practice as defined under State law" qualify as "health care provider[s]" under FMLA. 29 C.F.R. § 825.125(b)(2). An employee is "unable to perform the functions of [his] position" when his health care provider determines that he is "unable to work at all or is unable to perform any one of the essential functions" of his position within the meaning of the ADA and as defined in 29 C.F.R. § 1630.2(n). 29 C.F.R. § 825.123. Based on the allegations in the SAC that Abramovich concluded Plaintiff was temporarily unable to work due to his psychological conditions, it appears that Plaintiff could satisfy the third element of a FMLA claim, but he must allege facts in his amended complaint sufficient to satisfy the standard above.

### K.   Count Fourteen: Americans with Disabilities Act

In Count Fourteen, Plaintiff asserts claims under the ADA for disability discrimination, based on Defendant's alleged failure to accommodate his disability, and for retaliation.

#### 1.   Failure to Accommodate

Plaintiff asserts a claim for disability discrimination that the SAC characterizes as a claim premised on Defendant's alleged failure to accommodate Plaintiff's disability by granting medical leave. ECF No. 40 ¶219. Plaintiff appears to allege that Defendant failed to provide sufficient guidance regarding the documentation necessary to process his leave application, or to respond to Plaintiff's emails and phone calls in response to his requests for leave. *Id.* ¶¶219-20. Defendant

contends that Plaintiff failed to provide the documentation Defendant requested, thereby negating his claim for failure to accommodate. ECF No. 43-1 at 45.

At the outset, I must emphasize that Plaintiff does not appear to assert a traditional claim for failure to accommodate. I am unable to identify any allegations in the SAC indicating, for example, that Plaintiff tried to establish an arrangement with Defendant whereby Plaintiff would continue working, but on a schedule that accommodated his ongoing medical treatment. Rather, as stated in the SAC, "[t]he reasonable accommodation [] Plaintiff was requesting was a medical leave" based on his alleged disability. ECF No. 40 ¶219. In this regard, Plaintiff's failure to accommodate claim reads most naturally as a claim for traditional disability discrimination under the ADA, and I address this claim *infra* as part of my discussion of Plaintiff's claim for retaliation. However, because I must construe the SAC liberally, *Liggon–Redding*, 659 F.3d at 265, I will first analyze Plaintiff's claim as one for failure to accommodate.

To state a claim for disability discrimination under the ADA based on Defendant's failure to accommodate Plaintiff's alleged disability, Plaintiff must allege facts demonstrating that: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination . . . [which] include[s] refusing to make reasonable accommodations for [his] disabilit[y]." *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 186-87 (3d Cir. 2009).

If an employee requests an accommodation, the employer and employee must determine an accommodation that is reasonable through a "flexible, interactive process." *Id.* at 187. Both employers and employees "have a duty to assist in the search for [an] appropriate reasonable accommodation and to act in good faith." *Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 312 (3d Cir. 1999) (internal quotation marks and citations omitted). Employers can demonstrate good faith

by "meet[ing] with the employee who requests an accommodation, request[ing] information about the condition and what limitations the employee has, ask[ing] the employee what he or she specifically wants, show[ing] some sign of having considered employee's request, and offer[ing] and discuss[ing] available alternatives when the request is too burdensome." *Id.* at 317. However, a plaintiff cannot demonstrate a lack of good faith "if[,] after [the employer] confer[s] with the employee to find possible accommodations, the employee then fails to supply information that the employer needs or does not answer the employer's request for more detailed proposals." *Id.*; *see also Tatum*, 57 F. Supp. 2d at 149, *aff'd*, 216 F.3d 1077 (3d Cir. 2000).

Here, although Plaintiff adequately notified Defendant of his request for leave in order "to treat his medical condition," ECF No. 40 ¶219, Plaintiff has not alleged facts sufficient to demonstrate that Defendant failed to engage in the interactive process. As Plaintiff concedes, Defendant and its employees, including Di Carlo, met with Plaintiff to discuss his needs and possible mechanisms for securing leave. *E.g.*, ECF No. 40 ¶201 (noting July 24, 2018, meeting including Plaintiff and Di Carlo in which the parties decided Plaintiff would apply for FMLA benefits). Likewise, Plaintiff concedes that Defendant repeatedly requested information from Plaintiff about his condition, followed up with Plaintiff about these requests on multiple occasions, and "reviewed" Plaintiff's request for leave. *Id.* ¶¶219-21. Although Plaintiff alleges that an AFA representative told him Di Carlo's demands were excessive, *id.* ¶179, he has not identified any specific request from Defendant that was unreasonable.[10] Rather, Plaintiff notes that "[t]he list of documents requested

---

[10] Plaintiff alleges that, on August 1, 2018, Di Carlo requested that Plaintiff have a medical note from his LCSW, Abramovich, "amended to state that [Plaintiff] could not work from the date [they had] discussed." ECF No. 40 ¶168. Plaintiff alleges that Abramovich "expressed concern" about Di Carlo's request and "refused to modify the letter." *Id.* Plaintiff claims that he followed up with Di Carlo, that Di Carlo responded asking Plaintiff "to change the date 'to be the first date [Plaintiff] saw the doctor,'" and that Plaintiff then replied that the date on the letter was the date he began his sessions with Abramovich. *Id.* Thereafter, Plaintiff allegedly "requested information about returning to work," and Di Carlo informed him that he would "have to wait until the note is reviewed." *Id.* Di

became daunting and [he] couldn't manage to figure out how to attend to each demand, especially considering the Plaintiff's condition." *Id.* ¶221. While Plaintiff allegedly may have faced difficulties in meeting Defendant's requests, "an employer has the right and obligation to request additional information the employer believes it needs" in order to substantiate a request for an accommodation under the ADA. *Tatum*, 57 F. Supp. 2d at 149. The facts alleged in the SAC demonstrate that Defendant engaged in an interactive process with Plaintiff and requested information it needed to process his request for disability leave, and that Plaintiff failed to comply with those requests. Accordingly, Plaintiff has failed to state a claim for failure to accommodate under the ADA.

### 2.      Retaliation and Disability Discrimination

To state a *prima facie* claim for retaliation under the ADA, Plaintiff must allege facts demonstrating that: "(1) he was engaged in protected conduct; (2) an adverse action was taken; and (3) there is a causal link between the protected conduct and the adverse action." *Cottrell v. Good Wheels*, 458 Fed. App'x 98, 100 (3d Cir. 2012). To establish causation, Plaintiff generally must allege "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Where these indicia of causation are absent, "the plaintiff must show that from the 'evidence gleaned from the

---

Carlo then allegedly requested an in-person meeting with Plaintiff on October 16, 2018, at Newark Airport, where Plaintiff was stationed, apparently to discuss Plaintiff's medical note. *Id.* ¶¶12, 126, 168. However, Plaintiff was unable to attend the meeting because he was purportedly involved in a car accident while driving to Newark Airport. *Id.* ¶¶12, 126. Although Plaintiff appears to dispute whether these requests from Di Carlo were necessary, he has not explained why they were unreasonable, and they, in fact, appear to demonstrate an ongoing effort to accommodate Plaintiff. In any event, given the other allegations demonstrating Defendant's engagement with Plaintiff and its review of his request for leave, Plaintiff's allegations related to his interactions with Di Carlo concerning his medical note do not sufficiently aver that Defendant failed to engage in an interactive process.

record as a whole' the trier of the fact should infer causation." *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir.2000)).

Here, Plaintiff has stated a *prima facie* claim of retaliation under the ADA. With respect to the first element, Plaintiff has established that he was engaged in protected activity. Taking the allegations in the SAC as true, Plaintiff has sufficiently alleged that he suffered from a disability, which Defendant does not appear to dispute in its Motion to Dismiss. The ADA defines a disability as, *inter alia*, "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). A "physical or mental impairment" includes "[a]ny mental or psychological disorder, such as an intellectual disability . . ., organic brain syndrome, [or] emotional or mental illness." 29 C.F.R. § 1630.2(h)(2). Plaintiff's allegations that he "was diagnosed with manic depression . . . [and] PTSD," ECF No. 40 ¶216, satisfy this standard. Furthermore, Plaintiff's allegations that his mental impairments substantially limit his ability to concentrate, think, communicate, and interact with others are sufficient to demonstrate that these impairments substantially limit one or more major life activities. *See* 29 C.F.R. § 1630.2(i)-(j). Plaintiff has also alleged that he requested medical leave from Defendant in order "to treat his medical condition," ECF No. 40 ¶219, [11] and that he was terminated. Accordingly, Plaintiff has adequately alleged that "(1) he was engaged in protected conduct" and that "(2) an adverse action was taken" against him. *Cottrell*, 458 Fed. App'x at 100.

Plaintiff has also adequately alleged the third element of a retaliation claim—a "causal link

---

[11] Plaintiff alleges that, according to guidance he received from a representative at the AFA, he was "approved on Medical Leave until January 31, 2019." ECF No. 40 ¶¶15, 150, 163. Although I accept these allegations as true for purposes of Defendant's Motion to Dismiss, they appear to be contradicted by other allegations in the SAC, which suggest that Plaintiff merely received guidance from an AFA representative, Ernie Cornejo, that he would qualify for medical leave. *Id.* ¶¶15, 163. Nevertheless, I accept Plaintiff's allegations as true for purposes of this Motion, and Defendants are free to rebut these allegations at a later stage of this litigation.

between the protected conduct and the adverse action." *Id.* Plaintiff may establish causation by demonstrating "unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action," or by showing "a pattern of antagonism coupled with timing." *DeFlaminis*, 480 F.3d at 267. Based on Plaintiff's allegations in the SAC, he was engaged in protected activity—seeking leave based on his disability—at the time he was terminated. *See, e.g.*, ECF No. 40 ¶ 177 (discussing Plaintiff's attempts in November and December 2018 to secure medical documentation from a health care provider sufficient to qualify him for leave). Plaintiff also alleges that he had been seeking authorization to take medical leave for several months prior to his termination. *See, e.g.*, *id.* ¶ 201 (discussing Plaintiff's application for FMLA benefits between July and October 2018). During this period, Plaintiff alleges that Di Carlo failed to provide adequate guidance as to United's "policies and procedures regarding long-term leaves." *Id.* ¶ 176. He also alleges that, prior to November 13, 2018, neither Di Carlo nor any other United employee notified him that his LCSW, Abramovich, was not qualified to complete his Absence Certificate. *Id.* By alleging that he had been seeking medical leave for months prior to his termination and was ultimately terminated while he was seeking leave, Plaintiff has demonstrated sufficiently suggestive circumstances to establish the causation element of his retaliation claim. Accordingly, Defendant's Motion to Dismiss Plaintiff's ADA retaliation claim is denied.

As noted *supra*, the Court also construes the SAC as stating a claim for traditional disability discrimination based on Plaintiff's termination while he was seeking medical leave to undergo treatment for his disability. "A plaintiff presents a prima facie case of discrimination under the ADA by demonstrating: (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Technologies*, 134 F.3d 576, 580 (3d Cir. 1998) (citations omitted).

For the reasons discussed *supra* with respect to Plaintiff's retaliation claim, the SAC sufficiently alleges the first and third elements of a discrimination claim. Furthermore, based on Plaintiff's ongoing employment as a flight attendant with United from 2011 until his absence beginning in April 2018, the Court infers from the SAC that Plaintiff was otherwise qualified to perform the essential functions of his job. Accordingly, Plaintiff has stated a claim for discrimination under the ADA.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss the Second Amended Complaint is **DENIED** in part and **GRANTED** in part. Defendant's Motion is denied with respect to Plaintiff's claim for retaliation and discriminatory termination under the ADA. Defendant's Motion is granted with prejudice with respect to every other claim except for Plaintiff's claim under the FMLA, which is dismissed without prejudice. Plaintiff is given leave to amend his SAC within 30 days of the Order accompanying this Opinion in order to allege facts demonstrating that he was eligible for FMLA benefits and that are otherwise sufficient to state a claim for FMLA interference. An appropriate form of Order is filed herewith.

Date: July 29, 2021                                     /s/ Freda L. Wolfson
                                                        Hon. Freda L. Wolfson
                                                        U.S. Chief District Judge